Name: Beom Su Lee
Address: 4322 Wilshire Blvd., Suite 109
Los Angeles, CA 90010, USA
Phone: 213-700-1271
Email: interwin77@hotmail.com

In Pro Per

FILED
2022 FEB 10 PM 2:04
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: ___

PAID
FEB 10 2022
Clerk, US District Court

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Beom Su Lee

    Plaintiff

v.

TV Chosun Corp.(d/b/a TV Chosun),

    Defendant(s).

CASE NUMBER: CV22-933-DSF(KSx)

COMPLAINT FOR:

COPYRIGHT INFRINGEMENT ON THE INTERNET

JURY DEMANDED

### I. THE PARTIES TO THIS COMPLAINT

**Plaintiff**

**Name** Beom Su Lee

Street Address 4322 Wilshire Blvd., Suite 109
City and County Los Angeles
State and Zip Code California 90010, USA
Telephone Number 213-700-1271

1

CV-126 (09/09)   PLEADING PAGE FOR A COMPLAINT

**Defendants**

**Name:TV Chosun Corp.(d/b/a TV Chosun )**

Street Address:30, Sejong-daero 21-gil, Jung-gu,
City and Country:Seoul,Republic of Korea
Telephone Number: 02-724-5114

**Name:Kakao Entertainment Corp.(d/b/a MELON)**

Street Address: 17, Teheran-Ro 103-Gil, Gangnam-Gu,
City and Country:Seoul ,Republic of Korea
Telephone Number: 02-2280-4920

**Name :MBC Corp. (d/b/a MBC)**

Street Address: 267 Seongam-Ro, Mapo-Gu
City and Country:Seoul,Republic of Korea
Telephone Number:02-789-0011

**Name :NHN BUGS Corp. (d/b/a BUGS )**

Street Address: 13487 Daewangpangyo-ro ,645beon-gil, Bundang-Gu, Seongnam, Gyeonggi-do
City and Country:Seongnam,Republic of Korea
Telephone Number:1566-4822

**Name:: Soribada Corp.. (d/b/a Soribada)**

Street Address:10th floor, 549, Dosan-daero, Gangnam-gu,
City and Country:Seoul,Republic of Korea
Telephone Number: 02-1577-7334

**Name TJ Media Corp.**

Street Address 8th floor, Sangam IT Tower,
434 World Cup Buk-ro, Mapo-gu,
City and Country:Seoul,Republic of Korea
Telephone Number 02-3663-4700

2

**Name:GENIE MUSIC Corp. (d/b/a GENIE MUSIC )**

Street Address: 415 Teheran-ro, Gangnam-gu,
(L7HOTELS Gangnam Tower 6th, 7th, 8th floor)
City and Country:Seoul,Republic of Korea
Telephone Number:1577-5337

**Name: Chung Eui Song TV**

Street Address 208 dong-#2303 Tapsil Village Apartment, Gongse-dong, Giheung-gu,
City and Country: Yongin,Gyeonggi-do, Republic of Korea
Telephone Number 010-5290-9701

**Name:SIMPLE ENTER (d/b/a MIRAE TELEBI )**

Street Address: Room 709, 7th floor, 672, Hoho-ro, Ilsandong-gu, Goyang-si, Gyeonggi-do
City and Country:Goyang-si,Republic of Korea
Telephone Number:010-8932-1233

**Name KEUM YOUNG Entertainment**

Street Address 31, Hangang-daero, Yongsan-gu,(Hangang-daero 31, 40-17)
City and Country:Seoul,Republic of Korea
Telephone Number 02-6390-2550

CV-126 (09-09)      PLEADING PAGE FOR A COMPLAINT

## II. INTRODUCTION

1. This is a civil action seeking damages for copyright infringement under the Copyright Act of the United States, 17 U.S.C. and the DMCA amended Title 17 of the United States Code

2. This Court has subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1338(a).

3. Defendants are doing business on the Internet and in this judicial district, the acts of infringement complained of herein occurred in the State of California and in this judicial district, and Defendants have caused injury to Plaintiff and his intellectual property on the Internet (Youtube and Internet music sales platform).

4. Plaintiff Beom Su Lee is a resident of the County of Los Angeles, State of California, the exclusive copyright holder of the late Jae Ho Lee's Musical Works in the World. (U.S.Copyright Certificate #TX5-432-807-Expires in 2030)

(**Exhibit 1** is a true, correct copy of the Jae Ho Lee's U.S. Copyright Certificate )

## III. FACTS OF THE CASE

5. Plaintiff Beom Su Lee is the 4th son of the late Jae Ho Lee (1919-1960 from Korea), Jae Ho Lee composed over 2,000 musical works between 1937-1960 in Korea, Jae Ho Lee is known in Korea as the Schubert of Korean Kayo (Korean popular song). The musical works of Jae Ho Lee remain extremely popular in Korea and abroad, Upon the death of Jae Ho Lee in 1960, the copyrights of musical works were inherited by his surviving family. Plaintiff and his family own the copyrights to the musical works of Jae Ho Lee.

In 1972, the Jae Ho Lee family immigrated to the United States, and nearly all of their families became naturalized citizens of the United States.

After the transfer of Jae Ho Lee 's copyright from Beom Seung Lee (Brother) in August 1st.2001,Plaintiff became the exclusive copyright owner of Jae Ho Lee 's Musical Works plus Unpublished Music and Plaintiff also holds Jae Ho Lee's Worldwide Copyright,

6. Plaintiff and his family published "The Collection of Lee, Jae Ho's Musical Compositions " in 1996. Plaintiff and his family own the copyrights of The Collection. , In 1999, Plaintiff and his mother Jung Sun Kim registered "The Collection of Lee, Jae Ho's Musical Compositions " at the U.S. Copyright Office from Los Angeles and received the registration certificate (TX5-432-807) in 2001,

This copyright is Jae Ho Lee's only official registration certificate in the U.S. and in the World.

7. Plaintiff has been investigating and found links to Jae Ho Lee's music that were illegally uploaded by the defendants on the Internet in 2021,

All evidence was secured through photography and video recording,

The plaintiff will present all photographs, recorded video evidences, and exhibits to the court and the defendants.

8. The plaintiff contacted the defendants over the past several months to inform them of Jae Ho Lee's music copyright infringement on the Internet, requested a license agreement, and demanded a license fee for the past three years, 2019-2021, but it was not implemented.

9. Even to this day, some defendants are willfully infringing on Jae Ho Lee's music copyright on the Internet, even though they know that Jae Ho Lee's music copyright infringement has occurred on the Internet.

10. Conversely, the plaintiff also signed a Jae Ho Lee music license contract with Korea's largest public broadcaster KBS Media and famous singer Joo Hyun-Mi TV ,YouTuber, and also received a three-year copyright license fee in 2021 .

## IV. STATUTE

11. **National Eligibility**

"The WIPO Copyright Treaty (WCT) and the WIPO Performances and Phonograms Treaty (WPPT) each require member countries to provide protection to certain works from other member countries or created by nationals of other membercountries. That protection must be no less favorable than that accorded to domestic works. Section 104 of the Copyright Act establishes the conditions of eligibility for protection under U.S. law for works from other countries. Section 102(b) of the DMCA amends section 104 of the Copyright Act and adds new definitions to section 101 of the Copyright Act in order to extend the protection of U.S. law to those works required to be protected under the WCT and the WPPT."

"**The Foreign Sovereign Immunities Act (FSIA) of 1976** is a United States law, codified at Title 28, §§ 1330, 1332, 1391(f), 1441(d), and 1602–1611 of the United States Code, that establishes the limitations as to whether a foreign sovereign nation (or its political subdivisions, agencies, or instrumentalities) may be sued in U.S. courts—federal or state. (In international law, government protection against lawsuits in foreign courts is known as state immunity; government immunity in domestic courts is known as sovereign immunity.) It also establishes specific procedures for service of process, attachment of property and execution of judgment in proceedings against a foreign state. The FSIA provides the exclusive basis and means to bring a lawsuit against a foreign sovereign in the United States. It was signed into law by United States President Gerald Ford on October 21, 1976.[6"
Jurisdictional statute
The FSIA is in practice primarily a jurisdictional statute. For the most part, it indicates what conditions must be met in order for a lawsuit against a foreign state to be instituted, not what conduct by a foreign sovereign is actionable. If a foreign defendant qualifies as a "Foreign State" under the FSIA, the Act provides that it shall be immune to suit in any U.S. court—federal or state—unless a statutory exception to immunity applies. The applicability of an exception to immunity is a matter of subject-matter jurisdiction, meaning if there is no exception to immunity, a court cannot hear the claim and must dismiss the suit. In Verlinden B.V. v. Central Bank of Nigeria, defendant challenged the jurisdiction of the district court, saying that FSIA could not give jurisdiction to the district court since it was not a case "arising under" federal law. The Supreme Court then found that since any invocation of jurisdiction under the FSIA would necessarily involve analysis of the exceptions to FSIA, FSIA cases by definition arise under federal law.

6

Under the FSIA, the burden of proof is initially on the defendant to establish that it is a "Foreign State", under the FSIA and therefore entitled to sovereign immunity. "Foreign State" is defined at 28 U.S.C. § 1603(a),(b). Once the defendant establishes that it is a foreign state, for the lawsuit to proceed, the plaintiff must prove that one of the Act's exceptions to immunity apply. The exceptions define both the types of actions as to which immunity does not attach and the territorial nexus required for adjudication in U.S. courts. The Act creates a form of long-arm statute establishing jurisdiction over claims that meet the criteria.

The exceptions are listed at 28 U.S.C. §§ 1605, 1605A, and 1607. The most common exceptions are when the Foreign State waives immunity (§ 1605(a)(1)) or agrees to submit a dispute to arbitration (§ 1605(a)(6)), engages in a commercial activity (§ 1605(a)(2)), commits a tort in the United States (such as a common traffic accident) (§ 1605(a)(5)) or expropriates property in violation of international law (§ 1605(a)(3)).

12. **The Digital Millennium Copyright Act (DMCA)** is a 1998 United States copyright law that implements two 1996 treaties of the World Intellectual Property Organization (WIPO). It criminalizes production and dissemination of technology, devices, or services intended to circumvent measures that control access to copyrighted works (commonly known as digital rights management or DRM). It also criminalizes the act of circumventing an access control, whether or not there is actual infringement of copyright itself. In addition, the DMCA heightens the penalties for copyright infringement on the Internet.[1][2] Passed on October 12, 1998, by a unanimous vote in the United States Senate and signed into law by President Bill Clinton on October 28, 1998, the DMCA amended Title 17 of the United States Code to extend the reach of copyright, while limiting the liability of the providers of online services for copyright infringement by their users.

What is Section 512 of the Digital Millennium Copyright Act?
Enacted in 1998 as part of the Digital Millennium Copyright Act (DMCA), section 512 established a system for copyright owners and online entities to address online infringement, including limitations on liability for compliant service providers to help foster the growth of internet-based services.

What is the Digital Millennium Copyright Act and its purpose?
The Digital Millennium Copyright Act. The DMCA was passed in 1998 as an anti-piracy statute effectively making it illegal to circumvent copy protections designed to prevent pirates from duplicating digital copyrighted works and selling or freely distributing them.
Who does DMCA benefit?
The DMCA clarifies what rights copyright owners have online, what they can do to protect their property, and what companies or people who have websites or offer Internet services have to do to protect themselves from users who violate the copyrights of others.

13. **U.S-COPYRIGHT LAW**

" CIVIL AND CRIMINAL PENALTIES FOR VIOLATION OF FEDERAL COPYRIGHT LAWS:

"As a general matter, copyright infringement occurs when a copyrighted work is reproduced, distributed, performed, publicly displayed, or made into a derivative work without the permission of the copyright owner" (The U.S .Copyright Office)"

"The legal penalties for copyright infringement are:

The law provides a range from $750 to $150,000 for each work infringed.

The Court can issue an injunction to stop the infringing acts.

The Court can impound the illegal works, The infringer can go to jail."

14. Plaintiff Beom Su Lee has been in contact with Office of the United States Trade Representative and U.S Embassy in Seoul, Korea ,with respect to the validity of Jae Ho Lee's U.S.Copyright in Korea. In order to receive the royalty of Jae Ho Lee's U.S copyright in Korea under KORUS -FTA. Since the United States – Korea Free Trade Agreement (KORUS) went into effect in 2012 Korea's copyright was extended to 70 years.

Jae Ho Lee's U.S.Copyright(TX5-432-807) for "The Collection of Lee, Jae Ho's Musical Compositions ,**Listed 125 Works** " **is not expired in the U.S. and Korea.**

**FIRST CAUSE OF ACTION FOR COPYRIGHT INFRINGEMENT**

**(UNDER 17 USCA §§ 101 ET. SEQ., INCLUDING 106, 504 and 602)**

**(THE DMCA AMENDED TITLE 17 OF THE UNITED STATES CODE)**

**(BY PLAINTIFF AGAINST ALL DEFENDANTS)**

15. Plaintiff hereby incorporates by reference Paragraphs 1 through 14 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

All Defendants do not have any license, authorization, permission or consent to use the Infringed Jae Ho Lee 's Musical Works on the Internet.

Plaintiff alleges copyright infringement based on the Defendants use unauthorized albums ,CDs and unauthorized reproduction, distribution,publicly displayed, public performance of Jae Ho Lee's Musical Works on the Internet .

WHEREFORE, Plaintiffs pray for judgment against Defendants, as follows:

(A) These wrongful acts have proximately caused and will continue to cause Plaintiff substantial injury, including losses in earnings, dilution of goodwill, injury to his reputation and reduction of value of Jae Ho Lee's Musical Works. The harm these wrongful acts will cause to Plaintiff is both imminent and irreparable, and the amount damage sustained by Plaintiff will be difficult to ascertain these acts continue. Plaintiff has no adequate remedy at Law.

(B) Plaintiff is entitled to an injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with them from engaging in further such unlawful conduct.

(C) For damages in such amount as may be found, or as otherwise permitted by law.

For the profits received by Defendants, and each of them, from the unauthorized public performance ,reproduction and commercial use of Plaintiff's father, Jae Ho Lee's musical works.

The Defendants shall pay such statutory damages as the Court deems just as specified in 17 U.S.C. § 504 (C) (1), namely, not more than $750.00 nor less than $30,000.00 for the infringements of the copyrights of each work and that the penalty be increased to $150,000.00 for the infringements of the copyrights of each work that is willfully infringed

**The proposed statutory damages for each work of Jae Ho Lee is US$30,000 -$150,000**

In 2021, despite the plaintiffs notifying the defendants several times of Jae Ho Lee's US copyright infringement, Defendants still intentionally infringing on Jae Ho Lee's works on the Internet as of February 7, 2022.

**Defendant:TV Chosun Corp.( d/b/a TV Chosun)**

Jae Ho Lee's Three works have been uploaded 6 times to YouTube by different singers and programs. (The three willful infringement - US$450,000).

**Defendant:MBC Corp.( d/b/a MBC)**

Jae Ho Lee's Five works have been uploaded 6 times to YouTube by different singers and programs. (The two willful infringement -US$300,000-The two infringement -US$60,000).

**Defendant:Kakao Entertainment Corp.(d/b/a Melon)**

Jae Ho Lee's twenty seven works have been uploaded over 27 times to Melon by different singers ,albums (The twenty seven infringement - US$810,000) and the defendant also infringed on his portrait rights by using Jae Ho Lee's photo without the Plaintiff;s permission (Fine of US$30,000)..

**Defendant:Chung Eui Song TV**

Jae Ho Lee's one work have been uploaded 6 times to YouTube by different singers and programs. (The six infringement - US$180,000),

The defendant illegally used Jae Ho Lee's famous composition **Dan Jang Eui MiAriGoGae** without the consent of the plaintiff's family to create the defendant's work, **ShinSarangGoGae, ShinMiAriGoGae** and distributed, broadcast, and uploaded it on the Internet and broadcasts, In addition, the defendant is accused of distributing false facts by not mentioning Jae Ho Lee's name in the composers of **ShinMiAriGoGae** ,the defendant only listed Chung Eui Song for composer section,sung by singer Da Hyun Kim, on the YouTube program of Chung Eui Song TV.

**Defendant:TJ Media Corp.**

Jae Ho Lee's thirteen works have been uploaded 13 times to YouTube by the defendant (The thirteen infringement - US$390,000).

**Defendant:KeumYoung Entertainment Corp.**

Jae Ho Lee's Four works have been uploaded 4 times to YouTube by the defendant (The four infringement - US$120,000).

**Defendant:SIMPLE ENTER (d/b/a MIRAE TELEBI )**

Jae Ho Lee's 3 works have been uploaded 3 times to YouTube by the defendant (The three infringement - US$90,000).

**Defendant:Genie Music Corp. (d/b/a Genie Music)**

The defendant uploaded 26 works of Jae Ho Lee on the Genie Music Internet 26 times (The twenty six infringement - US$780,000) .

11

**Defendant:NHN BUGS Corp.(d/b/a BUGS )**

Jae Ho Lee's twenty seven works have been uploaded over27 times to BUGS by different singers ,albums, (The twenty seven infringement - US$810,000).

**Defendant:SORIBADA Corp.(d/b/a SORIBADA )**

Jae Ho Lee's twenty seven works have been uploaded over 27 times to SORIBADA by different singers ,albums (The twenty seven infringement - US$810,000).

DATED: February 9 ,2022               Respectfully submitted,

                                      BY: _____

                                      BEOM SU LEE
                                      Plaintiff in Pro Per