BEOM SU LEE

4322 Wilshire Blvd.,#109
Los Angeles, CA 90010
Tel: 213-700-1271
Email: Interwin77@hotmail.com

Plaintiff: In Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

BEOM SU LEE

          Plaintiff,

vs.

TV Chosun Corp.,et al.,

          Defendants.

) Case No.: CV22-00933-DSF-KS
)
) **PLAINTIFF'S AMENDED**
) **COMPLAINT**
) **PURSUANT T0 F.R.C.P.11**
) **AND F.R.C.P.15**
)
) **COMPLAINT FOR:**
) **COPYRIGHT INFRINGEMENT**
) **ON THE INTERNET**
)
) **JURY DEMANDED**

1

PLAINTIFF'S AMENDED COMPLAINT

# TABLE OF CONTENTS                                          Page

I. INTRODUCTION ...................................................................4

II. LEGAL STAND ................................................................5-10

III. ARGUEMENT ................................................................11-15

IV. CONCLUSION ................................................................15-16

PLAINTIFF'S AMENDED COMPLAINT

# TABLE OF AUTHORITIES                                                Page

**Cases**

*Mwani v. Bin Laden*, 417 F.3d 1 (D.C. Cir. 2005)……………………………….5

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344 (4th Cir. 2020)……………6

*Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984…………7

*Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)…………………………7

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)

*Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1284
 (9th Cir. 1977)………………………………………………………………….7

*Mavrix Photo*, 647 F.3d at 1223
 (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)……..7

*United States v. Alcoa*, 148 F.2d 416 (2d Cir. 1945) (Learned Hand, J.)……..7

*Graduate Management Admission Council v. Raju*, 241 F.Supp.2d 589
(E.D.Va.,2003)……………………………………………………………….8

*SK Trading International Co. v. Superior Court of San Francisco County*,
 No. A163590 (Cal. App. 1st Dist. Mar. 21, 2022)……………………………9

*Shippitsa Ltd. v. Slack*, No. 18-CV-1036, 2019 U.S. Dist. LEXIS 121994
(N.D. Tex. July 23, 2019)………………………………………………….9-10

PLAINTIFF'S AMENDED COMPLAINT

# THE PARTIES TO THIS AMENDED COMPLAINT

Plaintiff :Beom Su Lee ("Plaintiff"),

Defendants :TV Chosun Corp. (d/b/a TV Chosun), Kakao Entertainment (d/b/a MELON), NHN BUGS (d/b/a BUGS ), TJ Media Corp., KEUM YOUNG Entertainment, Soribada Corp.. (d/b/a Soribada), MBC Corp.( d/b/a MBC),Genie Music Corp.( d/b/a Genie Music), Chung Eui Song TV, Simple Enter (d/b/a MIRAE TELEBI) ("Defendants').

# I. INTRODUCTION

1. This is a civil action seeking damages for copyright infringement under the Copyright Act of the United States, 17 U.S.C. and the DMCA amended Title 17 of the United States Code and US-Korea FTA Article 18 - Intellectual Property Rights.

2. This Court has subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1338(a).

3. Defendants are doing business on the Internet and in this judicial district, the acts of infringement complained of herein occurred in the State of California and in this judicial district, and Defendants have caused injury to Plaintiff and his intellectual property on the Internet (Youtube and Internet Music Platform).

4. Plaintiff Beom Su Lee is a resident of the County of Los Angeles, State of California, the exclusive copyright holder of the late Jae Ho Lee's Musical Works in the World. (U.S.Copyright Certificate #TX5-432-807-Expires in 2030).
**(Exhibit 1** is a true ,correct copy of the Jae Ho Lee's U.S. Copyright Certificate )

4

## II. LEGAL STAND

**Rule 4(k)(2): Preventing Foreign Defendants from Escaping Personal Jurisdiction**

"Federal Rule of Civil Procedure 4(k)(2), adopted in 1993, prevents foreign defendants that have violated United States Federal laws from escaping suit for lack of personal jurisdiction. Prior to the adoption of Rule 4(k)(2), foreign defendants whose contacts with any particular state forum were not sufficient to support personal jurisdiction were able to move for dismissal, even if they had sufficient contacts warranting claims for violation of Federal laws. Rule 4(k)(2) remedied that situation and has allowed, for example in Mwani v. Bin Laden, 417 F.3d 1 (D.C. Cir. 2005), personal jurisdiction in U.S. courts over foreign terrorists performing acts outside the United States that affect Americans (the bombing of an American embassy). More recently, the Federal Circuit (the appeal Court for all patent related cases) has affirmed the application of Rule 4(k)(2) to foreign patent infringement defendants. This alert highlights the factual scenarios in which Rule 4(k)(2) has been used to obtain personal jurisdiction over foreign defendants in patent related matters."

"**Personal jurisdiction** in the federal courts is governed by rule 4 of the Federal Rules of Civil Procedure. Rule 4 directs every federal district court to follow the law on personal jurisdiction that is in force in the state courts where the federal court is located. Federal courts may also use state long-arm statutes to reach defendants beyond the territory of their normal jurisdiction. In cases that may be brought only in a federal court, such as lawsuits involving federal securities and antitrust laws, federal courts may exercise personal jurisdiction over a defendant regardless of where the defendant is found"

"**Personal Jurisdiction -- The Four Basic Types**

Personal jurisdiction has four major categories in case law, and while three of them are fairly easy to understand, the fourth, "minimum contacts," can be difficult to determine:

Presence: Being served with a copy of the summons and complaint while physically present in the forum state in sufficient to give a court in that state jurisdiction over the person who was served. That means that even if you were only just passing through the state for a few minutes, if you are properly served, you can be sued in that state.

Domicile/Place of Business: Domicile or residence in a state is enough to give courts in that state jurisdiction over you. This also applies to wherever you establish your place of business. In practice, this means that even if the incident took place in another state or

even in another country, you can always be sued in the state in which you have established residence or maintain your place of business.

Consent: Not surprisingly, you can simply consent to a court having personal jurisdiction over you. Consent comes in two basic forms, express and implied. Express consent can be given by voluntarily appearing before the court and submitting yourself to its jurisdiction. This means that even if a court otherwise didn't have power over you, by showing up, you can grant the court that power. Consent also can be implied, and one of the most common forms of implied consent is by driving on the roads of that state. Courts consider you to have given implied consent to the laws regulating roads, and thus if you have a car accident on the road in that state, a court has personal jurisdiction over you.

Minimum Contacts: A court can also have personal jurisdiction over you if you maintain certain "minimum contacts" with the state where a court resides. Minimum contacts is somewhat of a catchall where a court decides that you've had enough interaction with a state to justify having personal jurisdiction over you. Below is the basic test courts use to determine whether you've established minimum contacts with a state." (Source-Findlaw.com)

"**4th Circuit Finds Jurisdiction Over Foreign Website Operator Who Never Worked in or Visited the United States**

October 6, 2020 By Pu-Cheng (Leo) Huang, Edited by Margaret A. Esquenet

The internet connects the globe and makes it easy to share information across the world. Yet its borderless nature presents difficult questions for U.S. courts. Should a foreign website operator who had never performed any work within the United States, or even visited here, be subjected to suit in the United States? The Fourth Circuit considered this issue in a case involving a Russian citizen who operated websites that allegedly infringed twelve record companies' U.S. copyrights.

The defendant, Tofig Kurbanov, owned and ran two websites in Russia—"FLVTO" and "2conv"—which provide a "stream-ripping" service that allows visitors to download copyrighted music extracted from YouTube videos. The websites have become two of the most popular on the internet, including among Americans. Not surprisingly the copyright owners—twelve record companies—objected to Kurbanov's activities and sued him in federal court in Virginia for copyright infringement. And while the district court found that it had no jurisdiction over Kurbanov—and thus dismissed the lawsuit—the Fourth Circuit disagreed.

A federal court can properly exercise personal jurisdiction over a nonresident if two conditions are satisfied. First, jurisdiction over the nonresident has to be authorized by the "long-arm statute" "The case is *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344 (4th Cir. 2020)."

6

---

PLAINTIFF'S AMENDED COMPLAINT

## "B. Personal Jurisdiction

"The party seeking to invoke jurisdiction has the burden of establishing that jurisdiction exists." Flynt Distributing Co. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984). Where the court does not conduct an evidentiary hearing regarding personal jurisdiction, "the plaintiff need make only a prima facie showing of jurisdictional facts." Id. To satisfy this burden, the plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). "The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (internal quotation marks and citation omitted). The court may not assume the truth of such allegations if they are contradicted by affidavit. Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977). However, factual disputes are resolved in the plaintiff's favor. Mavrix Photo, 647 F.3d at 1223 (citing Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).”

"In the United States, the federal courts have recognized an important mechanism for acquiring jurisdiction over foreign defendants known as the effects doctrine. The effects doctrine is an offshoot of the territorial principle. Briefly, the effects doctrine says that if the effects of extraterritorial behavior or crimes adversely affect commerce or harm citizens within the United States, then jurisdiction in a U.S. court is permissible. The first case to establish the effects doctrine was United States v. Alcoa, 148 F.2d 416 (2d Cir. 1945) (Learned Hand, J.).

The ALCOA case brought charges against a foreign consortium of aluminum traders and producers who had affected the price of raw aluminum and goods manufactured from aluminum in the United States through unfair trade practices of price fixing in violation of section 1 of the Sherman Antitrust Act ("every contract, combination ... or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal").[3] The effects doctrine has also been incorporated into § 402 of the Restatement of Foreign Relations Law of the United States, Third: "a state has jurisdiction to prescribe law with respect to ... (c) conduct outside its territory that has or is intended to have substantial effect within its territory."

"In the aftermath of the Cold War, the United States has emerged as a prominent figure in international economic and political relations. TheUnited States is a major contributor to and receiver of overseas investments, world

7

PLAINTIFF'S AMENDED COMPLAINT

travel, international trade, and foreign aid programs. Consequently, the increase of international transactions gives rise to an array of international disputes. Rule 4 of the Amended Federal Rules of Civil Procedure responds to the increasing demands of United States nationals attempting to assert jurisdiction over foreign defendants in private international legal transactions. The Amended Rule3 4(k), specifically, extends the extraterritorial reach of United States federal courts over foreign defendants by expanding the scope of personal jurisdiction in federal question cases. The amended rule expands domestic as well as international in-personam jurisdiction5 in all federal question cases6 from statewide to "nationwide" jurisdiction of the United States over non-resident and foreign defendants. The analysis under the amended rule focuses on a defendant's "aggregate" "

"Questions over personal jurisdiction over foreign defendants in the United States arise when foreign nationals commit crimes against Americans, or when a person from or in a different country is sued in U.S. courts, or when events took place in another country. Such cases arise when crimes are committed on the high seas or on international flights, when crimes are alleged to be committed by or against Americans in foreign countries (such as under the Foreign Corrupt Practices Act), or when crimes are committed by foreigners against Americans.

**The Internet also allows computer crime to cross international boundaries.[1]"**

"In one case, the decision to allow jurisdiction in a U.S. court over claims of copyright infringement and cybersquatting was premised on an effects doctrine theory of jurisdiction. *Graduate Management Admission Council v. Raju*, 241 F.Supp.2d 589 (E.D. Va., 2003).

The defendant in *Raju* was a citizen of India who sold "official" past Graduate Record Examinations (GREs) to U.S. customers that were of dubious origin and in violation of the plaintiff, copyright-holder Graduate Management Admission Council (GMAC). These exams were advertised and sold over the Internet.

The defendant never made an appearance on U.S. territory depriving the plaintiffs of one easy avenue of obtaining *in personam* jurisdiction over the defendant – the simple act of being able to serve process on the defendant while the defendant is visiting and within the territory of the United States (this would be the traditional territorial principle of jurisdiction at work, to use terms of international law). The defendant was not a citizen of a particular state. The court described the jurisdiction it exercised over Raju's conduct of selling illegal copies of the exams to potential purchasers in several states within the territory of the U.S. as "targeting" the U.S. market for U.S. purchasers. Under these circumstances, the court found that personal jurisdiction was proper under a theory of **national jurisdiction**: the defendant had targeted the U.S. at large from outside of the territory and intended to avail himself of the opportunity of selling test answers to a U.S. graduate school entrance test to his most likely customers: Americans.

A judgment was issued against the defendant Raju who <u>defaulted</u> by never making an appearance to the district court where he was being sued."

**"Korean Company Has Sufficient Nexus with State to Permit Gas Price Manipulation Suit by California Attorney General**

A recent decision by the California Court of Appeal clarified that, to demonstrate the court's personal jurisdiction over a defendant in an antitrust case, the attorney general must simply establish that a defendant's activities directed at the California market have a direct nexus with the anticompetitive conduct alleged in the complaint. SK Trading International Co. v. Superior Court of San Francisco County, No. A163590 (Cal. App. 1st Dist. Mar. 21, 2022).

The California attorney general filed suit against two oil and gas companies, SK Energy and Vitol, alleging that they participated in a conspiracy to manipulate the California gas market by artificially inflating spot market prices. As part of that suit, the attorney general sought to serve SK Trading, a South Korean corporation, which was the parent of SK Energy. SK Trading moved to quash service for lack of personal jurisdiction.

SK Trading argued that it has never had a presence in California or conducted business in the state, nor has it ever entered into a contract to buy or sell gasoline or gasoline futures contracts. It also stated that it has never executed any trades in California. The attorney general provided evidence that SK Trading encouraged SK Energy to hire a new trader with California gasoline trading experience and that it interviewed and approved the hiring of a trader formerly employed by Vitol. The new trader considered SK Trading his "management," and was unhappy with SK Trading's "micromanagement" of his actions.
A SK Trading executive met with a Vitol trader in Texas and discussed the "joint venture" in the West Coast market.

The California Court of Appeal distinguished this decision from an earlier federal district court decision that SK Trading was not subject to personal jurisdiction in California on similar claims. The federal court based its decision on agency and ratification theories. But the California Court of Appeal held that, under California law, "Plaintiff need not establish that SK Energy was acting as an agent of SK Trading so long as its claims relate to SK Trading's own activities directed to the California market." The appellate court also rejected the federal court's use of a "but for" standard, under which plaintiff had to show it would not have been injured but for the actions of SK Trading. The court held that it was sufficient that SK Trading's activities directed at the California market had a direct nexus with the alleged anticompetitive conduct."

**"In Shippitsa Ltd. v. Slack, No. 18-CV-1036, 2019 U.S. Dist. LEXIS 121994 (N.D. Tex. July 23, 2019),** a federal district court reiterated the standards applicable to determining whether there is personal jurisdiction over a foreign defendant in the context of online web businesses and allegations of trademark infringement,.

9

PLAINTIFF'S AMENDED COMPLAINT

The court found that under federal law, the Cyprus-incorporated and -headquartered defendant's interactive website allowing the commercial exchange of information with Texas customers was sufficient for the exercise of personal jurisdiction over that defendant in Texas."

**THE UNITED STATES – KOREA FREE TRADE AGREEMENT**

"On June 30, 2007, the United States Trade Representative entered into a free trade agreement with Korea ("Agreement").
The Agreement clarifies and builds on existing international standards for the protection and enforcement of intellectual property rights, with an emphasis on new and emerging technologies. The Agreement ensures that Korea will provide a high level of IPR protection, similar to that provided under U.S. law. Key provisions of the Agreement, such as those on preventing circumvention of anti-piracy devices and establishing the scope of liability for copying works on the Internet, are modeled on U.S. statutes. The Agreement includes state-of-the-art protection for trademarks and copyrights as well as expanded protection for patents and undisclosed information

**"Right to publicity:**
The right to commercially use the economic value of a face, name, etc.
The Korean Intellectual Property Office (Chairman Lee In-Sil) announced that the Act on the Prevention of Unfair Competition and Protection of Trade Secrets (hereinafter the 'Unfair Competition Prevention Act'), which contains such content, will come into effect from the 8th (June 8,2022),
In the future, signs that are widely known in Korea and have economic value and that can identify a specific person, such as name, portrait, voice, and signature, will be subject to legal protection.
In the case of infringing on the economic interests of others by unauthorized use of such personal marks in a way that goes against fair business practices or competition order, it is recognized as an act of unfair competition.
 In the event of economic damage caused by unauthorized use, the victim can claim compensation for damages and prohibition of unfair competition."
**(Source-The Korean Intellectual Property Office)**

Defendant Kakao Entertainment Corp. is posting Jae Ho Lee's photo to a music platform without the plaintiff's permission **(Exhibit 31**is a true ,correct copy of the Jae Ho Lee's photo on Melon music platform).

PLAINTIFF'S AMENDED COMPLAINT

## III. ARGUMENT

5. In Los Angeles, the largest Koreatown in the U.S is located in the center of Los Angeles and hundreds of thousands of Korean Americans live around it. About 1.5 million Korean Americans live in California as a whole. Los Angeles and California are within the daily living area of Korea with the development of the Internet and smartphones.

They live their lives by watching Korean news, politics, music, drama, culture, and broadcasting programs through the Internet.

Among them, YouTube is the largest and most influential internet video platform in the world, and a lot of content is uploaded by Koreans in Korea and the United States today, In particular, K-POP and K-Drama are famous and popular all over the world through the Internet.

Many Korean companies use the powerful marketing tool of the Internet to promote their music, drama, content, food, and consumer products to Korean Americans in the United States, And many Korean companies have established branches in California and are doing business, They are focusing on selling their products by targeting the Korean market in California, the largest in the United States, Plaintiff asserts that this includes the defendants' companies as well.

"**Rep. Chris Smith** said at the hearings that day, "Culturally, Korea has a tremendous influence on popular music, movies, and games. BTS (BTS) has become a global phenomenon that generates $3.6 billion in the Korean economy every year. Korean films won awards at the Oscars and Cannes Film Festival, and K-dramas created a global pop culture sensation." (Source-U.S. Congress)

6. The defendant TV Chosun held a Korean traditional music contest called "Miss Trot" in 2019. This contest created a huge popularity and sensation among Korean audiences in Korea, the United States and around the world for the stagnant Korean traditional music, And a female star named "Song Ga In" was born. (The Winner), The song she selected and sang at the final stage of the competition was Jae Ho Lee's **"Dan Jang Eui MiAri GoGae" (The MiAri Hill )**, This music was uploaded to YouTube by Defendant TV Chosun Corp and has recorded 5,046,597 views from 2019 to 2021, Plaintiff alleges that many Korean residents of California also saw this YouTube video.,

7. In the "'National Trot Championship" program created by KBS (KBS is the largest broadcasting company in Korea), the female trot star Shin MiRae herself selected and sang Jae Ho Lee's "Kkochmacha" (Flower Carriage), She became a star singer with one song "Kkochmacha" (Flower Carriage) from a singer who was not well known either, Shin MiRae is a singer who belongs to Defendant Simple Enter, This music was uploaded to YouTube by KBS and had 4,195.799 views in 2021, The plaintiff alleges that many Koreans living in California also watched the YouTube video.

12

PLAINTIFF'S AMENDED COMPLAINT

Due to the explosive popularity, the defendants are selling Jae Ho Lee's music

Song by Song GaIn and Shin MiRae on defendants' music platforms.
 **(Exhibit 32,33** is a true ,correct copy of the Song GaIn and Shin MiRae on defendants' music platforms).

**ASCAP – the American Society of Composers, Authors and Publishers (ASCAP)**

"How do businesses obtain permission to perform music? It is impossible for copyright owners to know of every conceivable use or Performance of their works,and it would also be difficult for users of music to locate all the copyright owners and negotiate licenses for all of the works that might be used. Therefore, writers and publishers of musical works authorize collective licensing organizations to locate and license public performances of their works." (Source-www.ascap.com)."

Before this lawsuit, all defendants refused to sign a license to use Jae Ho Lee's music

with the plaintiff in 2021.

8. The Chosun Ilbo, the parent company of the defendant TV Chosun Corp,

established the Chosun Ilbo LA(News Paper) in Los Angeles,

The defendant MBC Corp also established MBC America in Los Angeles,

Plaintiff heard from a local Karaoke dealer that the defendant TJ Media Corp.

also set up US branches in the past but withdrew due to copyright issues.

9. Among Koreans living in California, many Koreans visiting or staying in the

United States live in California.

Currently, the United States and Korea have signed the Visa Waiver Countries Treaty.

They have a Korean mobile phone or ID card and can access Korean internet sites,

Plaintiff heard from a traveler from Korea that he could use unlimited phone calls in Korea and the United States by paying $35 per month to a Korean telecommunication company in Korea.

As can be seen from the attached evidence, anyone can log in to the defendants' music platform with QR Code or SNS ID.
**(Exhibit 30,35,36,37** is a true ,correct copy of the Log In pages on defendants' music platforms).

The plaintiff alleges that they can listen to the music of their favorite singers and purchase through the Defendants' music platform,

A free music listening program is installed on the defendants' music platform, and anyone can enjoy some of their favorite music without logging in. Jae Ho Lee's music also applies, Plaintiff will present video as evidence if requested by the court.
**(Exhibit 39** is a true ,correct video copy of the Live performance of Jae Ho Lee's music on defendants' music platforms).

The defendants' music platform has uploaded and posted many famous Jae Ho Lee's music to help users sign up or promote and sell the music.

10. The defendants' music platform and YouTube link were not posted and blocked for Jae Ho Lee's music "Out of service area",

Often, Plaintiff cannot view published works with a warning that Internet viewing of copyrighted content is "Out of service area".

14

PLAINTIFF'S AMENDED COMPLAINT

11. The plaintiff received a third-party subpoena from the court on June 24, 2022, and sent it to Google along with the relevant documents on the same day as follows:
" Hello,
This case is currently pending in the United States Federal Court of L.A for US copyright infringement of Jae Ho Lee's music on the Internet including Youtube. (Case No: CV22-00933-DSF-KS)
We would appreciate it if you could provide us the number of clicks in California on each of the YouTube links below. Thank you for your cooperation."

The court subpoena is attached., Proof of Service,
Attachment-**ATTACHMENT-JAE HO LEE MUSIC LINK-YOUTUBE.**

**SUBPOENA**

"A command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, copying, testing, or sampling of the materials. (2) Issuing Court. **A subpoena must issue from the court where the action is pending.**"

### IV. CONCLUSION

12. Plaintiff asserts that all commercial activities and transactions of the defendants on the Internet are directly related to personal jurisdiction in California.

" In 1998, Congress passed the **Digital Millennium Copyright Act (DMCA)**, which amended U.S. copyright law to address important parts of the relationship between copyright and the internet."

"As a general matter, copyright infringement occurs when a copyrighted work is reproduced, distributed, **performed, publicly displayed**, or made into a derivative workwithout the permission of the copyright owner" **(The U.S .Copyright Office).**

15

PLAINTIFF'S AMENDED COMPLAINT

13. All Defendants do not have any license, authorization, permission or consent to use the Infringed Jae Ho Lee's Musical Works on the Internet.

14. Plaintiff asserts that personal jurisdiction would comport with "fair play and substantial justice."

15. In light of the above facts, this court has personal jurisdiction over the Defendants.

DATED: June 29, 2022

Respectfully submitted,

BY: _____

BEOM SU LEE /Plaintiff in Pro Per

16